## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| RESTAURANTS ACQUISITION I, LLC,[1] | Case No. 15-12406 (KG) |
| Debtor. | |

## DEBTOR'S MOTION FOR ENTRY OF
## ORDER (I) AUTHORIZING DEBTOR TO, IN THE
## ORDINARY COURSE, (A) USE ITS CASH MANAGEMENT SYSTEM,
## BANK ACCOUNTS, AND BUSINESS FORMS AND (B) PERFORM
## INTERCOMPANY TRANSACTIONS, (II) AUTHORIZING BANKS AND
## FINANCIAL INSTITUTIONS TO HONOR AND PROCESS ALL RELATED CHECK
## AND ELECTRONIC PAYMENT REQUESTS,  AND (III) GRANTING RELATED RELIEF

Restaurants Acquisition I, LLC, debtor and debtor-in-possession (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case"), by and through its undersigned counsel, hereby files this motion (the "Motion") seeking entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), pursuant to sections 105(a), 345, 363, 364, 507, 1107, and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2015-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (i) authorizing the Debtor to, in the ordinary course of its business, (a) use its existing cash management system, pre-petition bank accounts, and pre-petition business forms (without reference to the Debtor's status as a debtor-in-possession) and (b) perform intercompany transactions, (ii) authorizing the Debtor's banks and financial institutions to (a) maintain, service, and administer the Debtor's bank accounts and (b) honor and process all related checks and electronic payment requests consistent with the relief

---

[1] The Debtor's mailing address is 313 East Main Street, Suite 2, Hendersonville, TN and the last four digits of its tax identification number are 8761.

requested herein, (iii) waiving the Debtor's compliance with the guidelines set forth in section 345(b) of the Bankruptcy Code, and (iv) granting such other and further relief as requested herein or as the Court (defined herein) otherwise deems necessary or appropriate.  In support of this Motion, the Debtor submits the *Declaration of W. Craig Barber in Support of Chapter 11 Petition and First Day Pleadings of Restaurants Acquisition I, LLC* (the "First Day Declaration"), which is being filed contemporaneously herewith and are incorporated herein by reference.  In further support of this Motion, the Debtor respectfully states as follows:

## JURISDICTION

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated as of February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and, pursuant to Rule 9013-1(f) of the Local Rules, the Debtor consents to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

2.      Venue in the Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 105(a), 345, 363, 364, 507, 1107, and 1108 of the Bankruptcy Code, as supplemented by Bankruptcy Rules 6003 and 6004 and Local Rule 2015-2.

## BACKGROUND

4.      On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor continues to operate its businesses and manage its property as a debtor and debtor-in-possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee has been appointed in the Chapter 11 Case.

5.      The Debtor operates a chain of full-service restaurants throughout Texas, largely located in the Dallas-Fort Worth and Houston metropolitan area, operating under the trade-names Black-eyed Pea and Dixie House.  As of January 1, 2015, the Debtor operated thirty (30) restaurant locations (generally, the "Prepetition Stores").

6.      Since late 2013, the Debtor has experienced a decline in its cash flow performance.  At the same time, the Debtor's occupancy costs outpaced its revenues over the same period, further eroding the Debtor's profitability.  Under these circumstances, and despite the Debtor's best efforts, the Debtor began to fall behind on its obligations to creditors.  The Debtor's liquidity crisis also caused it to fall behind on its payments to various taxing authorities, including the federal government.

7.      In December 2013 and again in April 2015, the Debtor engaged investment bankers to address a recapitalization or sale of the Debtor. The Debtor received no offers as a result of this process.  Due to its lack of liquidity and its inability to attract new capital, the Debtor has not be able to maintain all of the Prepetition Stores.  As of the Petition Date, the Debtor has ceased operations at and/or closed fifteen (15) of its Prepetition Stores; it continues to operate fourteen (14) Black-eyed Pea restaurants and one (1) Dixie House restaurant.[2]

8.      Additional details regarding the Debtor's business, assets, capital structure, and the circumstances leading to the filing of this Chapter 11 Case are set forth in the First Day Declaration filed contemporaneously herewith and incorporated herein by reference as though set forth in full.

---

[2] As of the Petition Date, the Debtor has been locked out of one of these operating Prepetition Stores.

## CASH MANAGEMENT SYSTEM, BANK ACCOUNTS AND BUSINESS FORMS

### A.   Overview of The Debtor's Cash Management System

9.     The Debtor has an established cash management system it utilizes to collect, manage, and disburse funds used in the Debtor's operations in the ordinary course of business (the "Cash Management System").  A chart depicting the Cash Management System is attached hereto as **Exhibit B**.

10.     The Cash Management System enables the Debtor to facilitate its cash forecasting and reporting, monitor the collection and disbursement of funds, and maintain control over the administration of its bank accounts.

11.     As discussed in greater detail below, as of the Petition Date, the Debtor maintains all of its bank accounts with Bank of America, N.A. (the "Cash Management Bank").

12.     The Debtor currently generates and receives cash from the revenue generated pursuant to the operation of the Debtor's restaurant locations, which includes on and off premises consumption of food.

### B.   The Debtor's Bank Accounts

13.     In connection with the Cash Management System, the Debtor maintains three (3) bank accounts in its name (the "Debtor Accounts").  The Cash Management System also includes bank accounts held in the name of the Debtor's parent company, BEP America, Inc., and other Debtor affiliated entities (collectively, the "Affiliate Accounts" and, together with the Debtor Accounts, the "Bank Accounts").  A summary of the Bank Accounts is attached hereto as **Exhibit C**.  In the ordinary course of business, the Debtor and its affiliates routinely transfer money between the Bank Accounts via wire transfers and other electronic funds transfers.  The number of intercompany transfers amongst the network of Bank Accounts can exceed five in any given day.  The amount of funds that flow through the Cash Management System is highly

variable, but, on average, for the three month period ending on November 30, 2015, approximately $1,400,000 in funds was transferred between the various Bank Accounts each month.

14.    As of the Petition Date, the active Cash Management System consists of the following categories of Bank Accounts: disbursement and consolidation accounts.

### C.    The Debtor's Intercompany Transactions

15.    As reflected above, the Debtor utilizes a series of transfers (collectively, the "Intercompany Transactions") between the Debtor Accounts and the Affiliate Accounts in order to fund the payment of the Debtor's operating and administrative expenses, including, but not limited to, direct obligations of the Debtor.  In connection with the Intercompany Transactions, intercompany receivables and payables are created for the Debtor and its non-debtor affiliates in the ordinary course of business.  The Debtor maintains current and accurate accounting records of the Intercompany Transactions principally through journal entries that are used to track and record the intercompany balances that exist across the Debtor's corporate structure.  The Debtor will continue to maintain accurate records of the Intercompany Transactions and resulting intercompany claims during this Chapter 11 Case.

### D.    The Debtor's Existing Business Forms and Checks

16.    In the ordinary course of business, the Debtor uses numerous business forms, including, without limitation, checks, business cards, letterhead, purchase orders, and invoices (collectively, the "Business Forms").  Given the Debtor's well established cash management structure, to minimize the expense to the Debtor's estate associated with developing and/or purchasing new forms, the delay in conducting business prior to obtaining such forms, and the confusion of suppliers and other vendors, the Debtor, pursuant to Local Rule 2015-2(a), seeks authority to continue to use its Business Forms as such forms existed immediately prior to the

Petition Date, without reference therein to the Debtor's status as a debtor-in-possession.    In accordance with Local Rule 2015-2(a), to the extent the Debtor exhausts its existing supply of checks, the Debtor will reorder checks with the designation "Debtor-in-Possession" and the Chapter 11 Case.

### E.    Bank Fees and Charges

17.    In the ordinary course, the Cash Management Bank charges, and the Debtor pays, honors, or allows the deduction from the appropriate account, certain service and other fees, costs, charges, and expenses (collectively, the "Bank Fees").    In the six months preceding the Petition Date, the Bank Fees averaged approximately $10,000 per month.

### RELIEF REQUESTED

18.    By this Motion, the Debtor respectfully requests entry of the Order, substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105(a), 345, 363, 364, 507, 1107, and 1108 of the Bankruptcy Code, (a) authorizing the Debtor to, in the ordinary course of its business, (i) use the Cash Management System, Bank Accounts, and Business Forms (without reference to the Debtor's status as a debtor-in-possession) and (ii) perform Intercompany Transactions, (b) authorizing the Cash Management Bank to (i) maintain, service, and administer the Bank Accounts[3] and (ii) honor and process all related checks and electronic payment requests consistent with the relief requested herein, (c) waiving the Debtor's compliance with the guidelines set forth in section 345(b) of the Bankruptcy Code, and (d) granting such other and further relief as requested herein or as the Court otherwise deems necessary or appropriate.

---

[3] The Debtor believes that **Exhibit C** sets forth a complete list of Bank Accounts. Nevertheless, the Debtor requests that the Order granting the relief sought herein apply to all bank accounts that are actually a part of or are linked to the Cash Management System. Thus, to the extent any Bank Account has been inadvertently omitted from the list, the Debtor requests that the order granting the relief sought herein apply to such account.

19.     More specifically, the Debtor requests authority to use its Cash Management System during the pendency of this Chapter 11 Case in accordance with the ordinary course of the Debtor's business.

20.     The Debtor further requests that the Court authorize the Cash Management Bank to (a) continue to maintain, service, and administer the Bank Accounts, (b) debit the Bank Accounts in the ordinary course of business on account of (i) all checks drawn on the Bank Accounts that are cashed at the Cash Management Banks or exchanged for cashier's checks by the payees thereof prior to the Petition Date, (ii) all checks or other items deposited in one of the Bank Accounts at the Cash Management Bank prior to the Petition Date that have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, and (iii) all undisputed pre-petition amounts outstanding as of the date hereof, if any, owed to any Cash Management Bank as service charges for the maintenance of any aspect of the applicable Cash Management System, and (c) recognize and give effect to the transfers between the various Bank Accounts as contemplated herein.

## BASIS FOR RELIEF

### A.     The Debtor Should be Authorized to Use Its Cash Management System and Existing Bank Accounts

21.     The Debtor's request for authorization to utilize its Cash Management System is consistent with section 363(c)(1) of the Bankruptcy Code, which authorizes a debtor-in-possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(e)(1). The purpose of section 363(c)(1) of the Bankruptcy Code is to provide a debtor-in-possession with the flexibility to engage in the ordinary transactions required to operate its business without unneeded oversight by its creditors or the court. *See In re Columbia Gas Sys., Inc.*, 136 B.R. at 934. Courts have recognized that a debtor's ability to

continue the "routine transactions" necessitated by a debtor's cash management system is within the purview of section 363(c)(1) of the Bankruptcy Code. *Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.)*, 75 F.3d 1447, 1452 (10th Cir. 1996). In the event that the relief requested was outside of the ambit of section 363(c)(1) of the Bankruptcy Code, a bankruptcy court has the authority to authorize such relief under sections 363(b) or 105(a) of the Bankruptcy Code. Specifically, section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code, in turn, empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title." 11 U.S.C. § 105(a).

22.     Courts have noted that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992); *Official Comm. Of Unsecured Creditors of Columbia Gas Transmission Corp. v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys.),* Nos. 91-803, 91804, 1992 U.S. Dist. LEXIS 9460 (D. Del. July 6, 1992), *aff'd in part, rev'd in part*, 997 F.2d 1039 (3d Cir. 1993). As a result, courts have concluded that segregating and maintaining numerous accounts "would be a huge administrative burden and economically inefficient." *Columbia Gas*, 997 F.2d at 1061; *see also Southmark Corp. v. Grosz (In re Southmark Corp.),* 49 F.3d 1111, 1114 (5th Cir. 1995) (cash management system allows debtor "to administratively more efficiently and effectively its financial operations and assets").

23.     Bankruptcy courts therefore treat requests for authority to utilize existing cash management systems as a relatively "simple matter." *In re Baldwin-United Corp.,* 79 B.R. 321,

327 (Bankr. S.D. Ohio 1987). In *In re Charter Co.,* 778 F.2d 617 (11th Cir. 1985), for example, the bankruptcy court entered an order authorizing the debtor and 43 of its subsidiaries "to continue to consolidate the management of its cash as has been usual and customary in the past, and to transfer monies from affiliated entity to entity, including operating entities that are not debtors." *Id.* at 620. The Court of Appeals for the Eleventh Circuit then affirmed a subsequent district court decision denying a creditor's motion for leave to appeal the bankruptcy court's cash management order, holding that authorizing the debtors to utilize their pre-petition "routine cash management system" was "entirely consistent" with applicable provisions of the Bankruptcy Code. *Id.* at 621.

24.     Indeed, courts in this district routinely grant chapter 11 debtors similar authority to use existing cash management systems. *See, e.g., In re Vertis Holdings, Inc.*, No. 12-12821 (CSS) (Bankr. D. Del. Nov. 1, 2012); *In re TriValley Corp.*, No. 12-12291 (MFW) (Bankr. D. Del. Aug. 9, 2012); *In re Delta Petroleum Corp.*, No. 11-14006 (KJC) (Bankr. D. Del. Dec. 19, 2011); *In re Friendly's Ice Cream Corp.*, No. 11-13167 (KG) (Bankr. D. Del. Oct. 6, 2011*); In re Trico Marine Services, Inc.*, No. 10-12653 (BLS) (Bankr. D. Del. Oct. 12, 2010); *In re Penn Traffic Co.*. No. 09-14078 (PJW) (Bankr. D. Del. Nov. 19, 2009).

25.     Here, the Debtor has utilized the Cash Management System as part of its ordinary and usual business practices and as such, the Debtor believes that its use of the Cash Management System falls within the purview of ordinary course transactions permitted under section 363(c)(1) of the Bankruptcy Code. Moreover, appropriate circumstances exist for the Court to authorize the Debtor's use of the Cash Management System under sections 363(b)(1) and section 105(a) of the Bankruptcy Code.

26.    As an initial matter, the relief requested in this Motion will help minimize any disruption in the Debtor's business operations during the period between the Petition Date and the Debtor's emergence from chapter 11 and preserve the value of the Debtor's estate.

27.    Second, strict adherence to the Guidelines of the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") will prove to be exceedingly burdensome to the Debtor and its management, reduce efficiencies, and cause unnecessary expense.  Absent the relief requested herein, the Debtor will be required to, among other things, (a) close all existing bank accounts and open new debtor-in-possession accounts, (b) maintain a separate debtor-in-possession account for cash collateral, (c) obtain checks that bear the designation "debtor-in-possession", and (d) create new systems for manually issuing checks and paying post-petition obligations.  The delays that will result from opening the new accounts and revising cash management procedures would disrupt the Debtor's business operations at this critical time, have little or no benefit to the Debtor's estate, and potentially erode the value of the Debtor's business.  Accordingly, the Debtor should be allowed to use the Cash Management System consistent with the ordinary course of the Debtor's business.

**B.    The Debtor Should Be Authorized To Continue Using Existing Business Forms and Checks**

28.    As described above, in the ordinary course of business, the Debtor uses numerous varieties of Business Forms.  By virtue of the nature and scope of the Debtor's business operations, and in order to minimize expenses to the Debtor's estate, it is important that the Debtor be permitted to continue using the existing Business Forms without alteration or change, except as requested herein.

29.    Furthermore, parties doing business directly with the Debtor undoubtedly will be aware of the Debtor's status as a debtor-in-possession as a result of the communications and

notice of the commencement of this Chapter 11 Cases that the Debtor will distribute to such parties.  Accordingly, the requirement to change the Business Forms is unnecessary, would be unduly burdensome, and should be waived.  Such relief has similarly been granted in other chapter 11 cases in this district.  *See, e.g., In re Vertis Holdings, Inc.*, No. 12-12821 (CSS) (Bankr. D. Del. Nov. 1, 2012); *In re Tri-Valley Corp.*, No. 12-12291 (MFW) (Bankr. D. Del. Aug. 9, 2012); *In re Delta Petroleum Corp.*, No. 11-14006 (KJC) (Bankr. D. Del. Dec. 19, 2011); *In re Friendly's Ice Cream Corp.*, No. 11-13167 (KG) (Bankr. D. Del. Oct. 6, 2011); *In re Trico Marine Services, Inc.*, No. 10-12653 (BLS) (Bankr. D. Del. Oct. 12, 2010); *In re Penn Traffic Co.,* No. 09-14078 (PJW) (Bankr. D. Del. Nov. 19, 2009).

**C.      The Debtor Should Be Authorized To Continue Using Debit, Wire, and Electronic Transfers**

30.      The U.S. Trustee Guidelines require that all receipts and all disbursements of estate funds be by check with a notation representing the reason for the disbursement.  Given the Debtor's current operations, it is necessary for the Debtor to conduct transactions by debit, wire, automated clearing house ("ACH") transfers, ACH credit, ACH debit, and other similar methods of electronic transfers.  Denying the Debtor the opportunity to conduct transactions by these methods would likely interfere with the Debtor's performance under its contracts and obligations, unnecessarily distract the Debtor and its management from the Debtor's business operations, and create additional costs to be borne by the Debtor and its creditors.  Accordingly, the Debtor believes that it is imperative that the Cash Management Bank be authorized to continue to pay, honor, and execute any and all debit instructions, wires, ACH payments, and other forms of electronic transfers issued and drawn on the Bank Accounts after the Petition Date.

**D.     The Debtor Should Be Authorized To Continue Performing Intercompany Transactions in the Ordinary Course**

31.     The continued performance of the ordinary course Intercompany Transactions is integral to ensure the Debtor's ability to operate its business and preserve and maintain the Debtor's going-concern value for the benefit of all parties in interest.[4]  Because the Debtor's business is operationally and functionally interconnected to its affiliates, it maintains the centralized Cash Management System described above that necessarily requires numerous Intercompany Transactions.  Altering this system would require the Debtor to divert its attention from its restructuring efforts and the desired smooth transition into operating as a debtor-in-possession.  In contrast, the continuation of the Intercompany Transactions helps preserve the "business as usual" atmosphere and avoids the unnecessary distractions that inevitably would be associated with any substantial disruption in the Cash Management System.  Accordingly, the Debtor should be expressly authorized to continue performing the Intercompany Transactions consistent with the Debtor's customary practice.

32.     Based on the foregoing, the Debtor submits that the relief requested herein is necessary and appropriate, is in the best interests of its estate, creditors, and other parties-in-interest, and should be granted in all respects.  Moreover, this relief is necessary to avoid immediate and irreparable harm to the Debtor and its estate.

## RESERVATION OF RIGHTS

33.     To the extent that any contract or agreement in connection with any of the Cash Management System, the Bank Accounts, or the Intercompany Transactions is deemed an

---

[4] Because the Debtor engages in Intercompany Transactions on a regular basis, and such transactions are common among enterprises similar to the Debtor, the Debtor believe that the Intercompany Transactions are ordinary course transactions within the meaning of section 363(c)(1) of the Bankruptcy Code that do not require the Court's approval. Nonetheless, out of an abundance of caution, the Debtor is seeking express authority to engage in such transactions after the Petition Date.

executory contract within the meaning of section 365 of the Bankruptcy Code, the Debtor does not at this time intend to assume or reject such contract or agreement.  As such, the Court's authorization of payment shall not be deemed to constitute an assumption of such contract or agreement pursuant to section 365 of the Bankruptcy Code.  The Debtor is currently in the process of reviewing all of its contracts and agreements and reserves all of its rights with respect thereto.  Nothing herein shall acknowledge, grant, or otherwise permit any right of offset or recoupment by a non-debtor with respect to any claim asserted against the Debtor.  If the Court grants the relief sought herein, any payments made pursuant to the Court's order are not intended and should not be construed as an admission to the validity of any claim or a waiver of the rights of the Debtor to dispute such claim subsequently.

34.    Additionally, except as expressly stated herein, nothing contained herein is intended or should be construed as (a) an agreement or admission by the Debtor as to the validity of any claim against its estate, (b) a waiver or impairment of the Debtor's right to dispute any claim on any grounds, (c) a promise by the Debtor to pay any claim, or (d) an implication or admission by the Debtor that such claim is payable pursuant to an Order granting the relief requested in this Motion.

## THE DEBTOR SATISFIES BANKRUPTCY RULE 6003

35.    Bankruptcy Rule 6003 provides that, "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding ... a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate . . . ." Fed. R. Bankr. P. 6003(b).  The Debtor submits that, because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor for the reasons set forth herein, Bankruptcy Rule 6003 has been satisfied.

## WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

36.     To implement the foregoing successfully, the Debtor respectfully requests a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  As set forth above, the payments proposed herein are essential to prevent potentially irreparable damage to the Debtor's operations, value, and ability to reorganize. Accordingly, the Debtor submits that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent it applies.

## NO PREVIOUS REQUEST

37.     No prior motion for the relief requested herein has been made by the Debtor to this or any other court.

## NOTICE

38.     The Debtor will provide notice of this Motion to: (a) the Office of the U.S. Trustee; (b) the holders of the 20 largest unsecured claims against the Debtor; (c) the United States Attorney's Office for the District of Delaware; (d) the Internal Revenue Service; (e) Grove Family Investments, L.P and its counsel; (f) CNL Financial Group, Inc. and its counsel; (g) American Express Bank, FSB and its counsel; (h) the Cash Management Bank; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002.  As this Motion is seeking "first day" relief, within two business days of the hearing on this Motion, the Debtor will serve copies of this Motion and any order entered with respect to this Motion as required by Local Rule 9013-1(m).  The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, for the reasons set forth above and in the First Day Declaration, the Debtor respectfully requests that the Court enter the Order, substantially in the form attached as **Exhibit A** hereto, (i) authorizing the Debtor to, in the ordinary course of its businesses, (a) use the Cash Management System, Bank Accounts, and Business Forms (without reference to the Debtors' status as a debtors in possession) and (b) perform Intercompany Transactions, (ii) authorizing the Cash Management Bank to (a) maintain, service, and administer the Bank Accounts and (b) honor and process all related checks and electronic payment requests consistent with the relief requested herein, and (iii) granting such other and further relief as requested herein or as the Court otherwise deems necessary or appropriate.

Respectfully submitted,

Dated: December 2, 2015

DUANE MORRIS LLP

/s/ Sommer L. Ross
Sean J. Bellew (DE 4072)
Sommer L. Ross (DE 4598)
Jarret P. Hitchings (DE 5564)
222 Delaware Avenue, Suite 1600
Wilmington, DE 19801-1659
Telephone:  302.657.4900
Facsimile:   302.657.4901
sjbellew@duanemorris.com
slross@duanemorris.com
jphitchings@duanemorris.com

*Proposed Counsel to Debtor and Debtor-in-Possession Restaurants Acquisition I, LLC*