IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| RESTAURANTS ACQUISITION I, LLC,[1] | Case No. 15-12406 (KG) |
| Debtor. | |

DEBTOR'S MOTION FOR ENTRY OF
AN ORDER AUTHORIZING AND APPROVING (A) REJECTION
OF CERTAIN UNEXPIRED LEASES OF
NONRESIDENTIAL REAL PROPERTY, EFFECTIVE *NUNC PRO TUNC* TO THE
PETITION DATE, AND (B) ABANDONMENT OF CERTAIN PERSONAL PROPERTY

Restaurants Acquisition I, LLC (the "Debtor"), debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Chapter 11 Case"), by and through its undersigned counsel, hereby files this motion (the "Motion") for entry of an order, pursuant to sections 105(a), 365(a) and 554(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9013-l(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), substantially in the form attached hereto as **Exhibit A** (the "Order"), authorizing and approving (a) the rejection of certain executory contracts and unexpired leases, including any guaranties thereof and any amendments, modifications, renewal, options, or subleases thereto, for nonresidential real property located at the premises set forth on **Exhibit 1** to **Exhibit A**, effective *nunc pro tunc* to the Petition Date (defined herein), and (b) the abandonment of certain equipment, fixtures, furniture, or other personal property (the "Personal Property") that may be located at the premises.  In support of this Motion, the Debtor submits the *Declaration of W. Craig Barber in Support of Chapter 11*

---

[1] The Debtor's mailing address is 313 East Main Street, Suite 2, Hendersonville, TN and the last four digits of its tax identification number are 8761.

*Petition and First Day Pleadings of Restaurants Acquisition I, LLC* (the "First Day Declaration"). In further support of this Motion, the Debtor respectfully states as follows:

## JURISDICTION

1.  The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated as of February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and, pursuant to Rule 9013-1(f) of the Local Rules, the Debtor consents to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

2.  Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.  The bases for the relief requested herein are sections 105(a), 365(a) and 554(a) of the Bankruptcy Code, Rule 6006 of the Bankruptcy Rules and Rule 9013-l(m) of the Local Rules.

## BACKGROUND

4.  On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor continues to operate its businesses and manage its property as a debtor and debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee has been appointed in the Chapter 11 Case.

5.  The Debtor operates a chain of full-service restaurants throughout Texas, largely located in the Dallas-Fort Worth and Houston metropolitan area, operating under the trade-

names Black-eyed Pea and Dixie House.  As of January 1, 2015, the Debtor operated thirty restaurant locations (generally, the "Prepetition Stores").

6. Since late 2013, the Debtor has experienced a decline in its cash flow performance.  At the same time, the Debtor's occupancy costs outpaced its revenues over the same period, further eroding the Debtor's profitability.  Under these circumstances, and despite the Debtor's best efforts, the Debtor began to fall behind on its obligations to creditors.  The Debtor's liquidity crisis also caused it to fall behind on its payments to various taxing authorities, including the federal government.

7. In December 2013 and again in April 2015, the Debtor engaged investment bankers to address a recapitalization or sale of the Debtor. The Debtor received no offers as a result of this process.  Due to its lack of liquidity and its inability to attract new capital, the Debtor has not be able to maintain all of the Prepetition Stores.  As of the Petition Date, the Debtor has ceased operations at and/or closed fifteen (15) of its Prepetition Stores; it continues to operate fourteen (14) Black-eyed Pea restaurants and one (1) Dixie House restaurant.[2]

8. Additional details regarding the Debtor's business, assets, capital structure, and the circumstances leading to the filing of this Chapter 11 Case are set forth in the First Day Declaration filed contemporaneously herewith and incorporated herein by reference as though set forth in full.

**A.    Leases**

9. As described in the First Day Declaration, prior to the Petition Date, the Debtor operated thirty (30) restaurant locations throughout Texas (generally, the "Prepetition Stores"). The Debtor is the lessee of twenty-seven (27) of the Prepetition Store locations (the "RAI

---

[2] As of the Petition Date, the Debtor has been locked out of one of these operating Prepetition Stores.

Prepetition Stores"). Two (2) of the Prepetition Store locations are leased by the Debtor's non-debtor affiliate Texas Pea, LLC ("Texas Pea"). The remaining Prepetition Store location is leased by BEP America, LLC ("BEP America"). The Debtor operates the Texas Pea and BEP America Stores (together, the "Non-Debtor Prepetition Stores") pursuant to operating agreements with each of Texas Pea and BEP America.

10.     For the reasons described below, as of the Petition Date, the Debtor has closed and vacated fifteen (15) Prepetition Stores (the "Non-Core Stores").[3] The Debtor continues to operate fifteen (15) of the Prepetition Stores (the "Core Stores"), though it is currently locked out of one (1) of these Core Stores. Accordingly, as of Petition Date, the Debtor has thirteen (13) open restaurants operating under trade-name Black-eyed Pea and one (1) operating under the trade-name Dixie House.

11.     Since the end of 2013, the Debtor suffered a decline in store-level cash flow performance across all its Prepetition Stores. This decline in cash flow performance is the result of a confluence of events. First, on November 18, 2013, the Debtor's former credit card processor failed to remit over $250,000 of credit card receipts (without notice or advance warning) for an alleged credit card security compliance matter.  The Debtor expended considerable effort and over $100,000 in legal fees to force (via litigation) the return of its funds. Then, in the first two weeks of December, 2013 a weather event in Dallas, Texas (the Debtor's core market) impacted revenues by over $200,000 or 1.6% of revenues for that quarter.  The loss of a substantial portion of liquidity for a month from the credit card dispute, the related legal fees and the weather impact on revenues (cash flow) created multiple challenges for the Debtor, including disruption of its marketing cycle along with other ramifications from the sudden loss of

---

[3] The Debtor has been locked out of four (4) of the Non-Core Stores by its landlords for non-payment of rents.

a substantial amount of its cash flow. As a consequence, store-level cash flow before occupancy declined from $8.5 million in fiscal 2013 to $7.2 million in fiscal 2014 and $6.7 million for the trailing thirteen periods ending September 6, 2015. During that time period, the Debtor's occupancy costs increased from 10.8% of revenues in fiscal 2012 to 12.8% of revenues further eroding profitability.

12. In an effort to preserve the Debtor's profitability, the Debtor engaged an investment banker in December 2013 to address its capitalization. The process was slower than expected, and ultimately no offers of any kind were received as a result of this process. Even with the improved performance of the Debtor, the funded debt at the end of fiscal 2014 of $3.75 million was almost four times EBITDA, which is beyond traditional lending standards (without regard for the higher than industry standard occupancy costs of twelve percent (12%) of revenues). In April 2015, the Debtor engaged another investment banker to address again a recapitalization or sale of the Debtor. No offers have been received.

13. As a result of the Debtor's inability to attract new capital, achieve recapitalization of existing debt or sell (the Debtor or its assets), the Debtor has determined that a reorganization is the best way to preserve the jobs of its employees while providing a means to deliver value to its secured and unsecured creditors. The Debtor is confident that a reorganization will result in a healthy group of restaurants that will generate positive cash flow and facilitate meaningful payments (over time) to its creditors.

14. The Debtor has determined that the fifteen (15) Core Stores represent the base of restaurant locations that will provide a stable base of cash flow production that supports the Debtor's reorganization.[4] For the reasons described below, the Debtor intends to reject the leases

---

[4] The Core Stores include fourteen (14) RAI Prepetition Stores (including the one (1) RAI Prepetition Store that is currently subject to lock out) and the BEP America Prepetition Store.

for the Non-Core Stores.[5] The leases to be rejected (the "Leases"), together with a description of the Prepetition Store and landlord, are set forth on **Exhibit 1** to the Order attached hereto as **Exhibit A**.

15. The store-level cash flow before occupancy of the Core Stores declined from $6.3 million in fiscal year 2013 to $5.6 million in fiscal year 2014. However, for the trailing thirteen periods ending September 6, 2015, this metric remained at $5.6 million. This stabilization of Core Store profitability is the result of positive same-store revenues in the last two fiscal quarters, with positive same-stores revenues in nine of the last thirteen periods.

16. The Non-Core Stores have not experienced similar profitability stabilization, primarily due to occupancy costs. Specifically, the Debtor's occupancy costs for Core Stores is 11.2% of revenue for the trailing thirteen periods ending September 6, 2015. For Non-Core Stores, its occupancy costs for the same period is 16.3%.

17. The Debtor believes the positive cash flow generated by the Core Stores (results of operations less overhead expense, capital expenditures and Texas franchise taxes) will generate approximately $1 million per year. This value will be lost, however, if the Debtor is required to maintain its Leases of the Non-Core Stores.

18. The occupancy and other overhead costs of the Non-Core Stores impose a substantial financial burden on the Debtor of approximately $80,000 per month. The Debtor has closed and vacated each of the Non-Core Stores prior to the Petition Date in order to reduce or eliminate unnecessary overhead costs and other operating losses. As a result of these efforts, the

---

[5] The Non-Core Stores include the two (2) Texas Pea Prepetition Stores. Accordingly, this Motion seeks to reject thirteen (13) Non-Core Store Leases. For the avoidance of doubt, by this Motion, the Debtor is not seeking to affect any right or interest of any party with respect the Non-Debtor Prepetition Stores. The Debtor reserves all rights with respect to its ability to assume or reject its operating agreements with Texas Pea and BEP America concerning the Non-Debtor Prepetition Stores.

Debtor will be able to better deploy its remaining resources to focus on maintaining its Core Stores and successfully reorganizing its business.

19.     Accordingly, in an effort to reduce substantial postpetition administrative costs, and in order to position the Debtor for an effective reorganization and emergence from this Chapter 11 Case, the Debtor seeks to reject the Leases, as set forth on **Exhibit 1** to the Order attached hereto as **Exhibit A**, effective *nunc pro tunc* to the Petition Date.

### B.      Personal Property to be Abandoned

20.     Additionally, the Debtor has evaluated all of the Personal Property that may be located at each of the Non-Core Stores and has determined that such Personal Property is of inconsequential value and/or the cost of removing and storing the Personal Property for future use or marketing and sale exceeds its value to the Debtor's estate.  Further, the Debtor's use of the majority of the Personal Property has been for location-specific purposes.  Moreover, since the Debtor has closed and vacated each of the Non-Core Stores, the Debtor believes that any Personal Property remaining at such Non-Core Store is no longer necessary for the Debtor's business operations.[6]

21.     Accordingly, in an effort to reduce postpetition administrative costs and in the exercise of the Debtor's sound business judgment, the Debtor believes that the abandonment of the Personal Property may be appropriate and in the best interests of the Debtor, its estate and its creditors.

---

[6] With respect to Personal Property remaining inside those Non-Core Stores from which the Debtor has been locked out, the Debtor reserves, and does not herein waive, any and all rights with respect to such Personal Property or its right to recover such Property. Moreover, by this Motion, the Debtor is not seeking to abandon any property that may, in fact, belong to any third-party or waive the rights of such parties in connection with such property.

**RELIEF REQUESTED**

22. By this motion, and pursuant to Bankruptcy Code sections 105(a), 365(a) and 554(a), Bankruptcy Rule 6006 and Local Rule 9013-l(m), the Debtor seeks authority to (a) reject the Leases set forth on **Exhibit 1** to **Exhibit A**, effective *nunc pro tunc* to the Petition Date, and (b) abandon the Personal Property in the Debtor's sole discretion.

**BASIS FOR RELIEF**

**A.  Rejection of the Leases, Effective *Nunc Pro Tunc* to the Petition Date, is Appropriate and Provides the Debtor with Significant Cost Savings**

23. Bankruptcy Code Section 365(a) provides that a debtor-in-possession, "subject to the court's approval, may ... reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). The decision to assume or reject an executory contract or unexpired lease is a matter within the "business judgment" of the debtor. *See Nat'l Labor Relations Bd.* v. *Bildisco & Bildisco (In re Bildisco),* 682 F.2d 72, 79 (3d Cir. 1982) ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test." (citation omitted)); *see also In re Trans World Airlines, Inc.,* 261 B.R. 103, 121 (Bankr. D. Del. 2001). Application of the business judgment standard requires a court to approve a debtor's business decision unless the decision is the product of bad faith, whim or caprice. *See Lubrizol Enters., Inc.* v. *Richmond Metal Finishes*, 756 F.2d 1043, 1047 (4th Cir. 1985); *see also In re Caribbean Petroleum Corp.,* 444 B.R. 263, 268 (Bankr. D. Del. 2010). Further, "[t]his provision allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed." *Stewart Title Guar. Co.* v. *Old Republic Nat'l Title Ins. Co.,* 83 F.3d 735, 741 (5th Cir. 1996) (citation omitted); *see also In re Rickel Home Ctrs., Inc.,* 209 F.3d 291, 298 (3d Cir. 2000).

24. Rejection of an executory contract or unexpired lease is appropriate where such rejection would benefit the estate. *See Sharon Steel Corp.* v. *Nan Fuel Gas Distrib. Corp. (In re Sharon Steel Corp.),* 872 F.2d 36, 39-40 (3d Cir. 1989). Upon finding that a debtor has exercised its sound business judgment in determining that rejection of certain contracts or leases is in the best interests of its creditors and all parties-in-interest, a court should approve the rejection under Bankruptcy Code section 365(a). *See In re Fed. Mogul Global, Inc.,* 293 B.R. 124, 126 (D. Del. 2003); *In re Wheeling-Pittsburg Steel Corp.,* 59 B.R. 129, 136 (Bankr. W.D. Penn. 1986) (discussing deference accorded by court to debtor's decision to assume or reject an executory contract, which "should be granted as a matter of course") (quoting *In re Summit Land Col,* 13 B.R. 310, 315 (Bankr. D. Utah 1981)).

25. The rejection of the Leases is a proper exercise of the Debtor's business judgment. The Leases, which concern Non-Core Stores that have ceased operations, are not a source of potential value for the Debtor's future operations, estate, or creditors, and the potential continuing obligations for rent, tax, utility, insurance and other overhead charges related to the Leases would unnecessarily deplete the estate's assets to the detriment of other creditors. An integral component of the Debtor's chapter 11 efforts is to optimize its business operations by, among other things, eliminating unnecessary operating costs. Rejecting the Leases for closed restaurants is a clear way to eliminate such unnecessary costs, as rejection will eliminate the Debtor's obligation to perform under the Leases and the accrual of any further obligations thereunder, such as administrative rent. At the same time, affected landlords will not suffer any prejudice, as claims based on the rejection of the Leases may be filed in accordance with the bar date for filing proofs of claim, to be established by the Court at a later date. Accordingly, the

decision to reject the Leases is a proper exercise of the Debtor's business judgment, and rejection of the Leases should therefore be approved.

        **B.**      **Rejection of the Leases *Nunc Pro Tunc* to the Petition Date is Appropriate Under the Circumstances**

26.      The Debtor respectfully submits that it is appropriate for the Court to order that the Petition Date be the effective date of rejection for the Leases.[7] While Bankruptcy Code section 365 does not specifically address whether the Court may order rejection to be effective retroactively, courts have held that they are empowered to authorize retroactive rejection of a contract or lease under Bankruptcy Code section 365(a). *See, e.g., In re Chi-Chi's, Inc.,* 305 B.R. 396, 399 (Bankr. D. Del. 2004) (acknowledging that a bankruptcy court may approve rejection of a nonresidential lease retroactive to the date the motion is filed after balancing the equities in the particular case); *In re Fleming Cos., Inc.,* 304 B.R. 85, 96 (Bankr. D. Del. 2003) (stating that rejection of nonresidential leases has been allowed *nunc pro tunc* to the date of the motion or the date the premises were surrendered); *In re QCE Finance LLC,* No. 14-10543-LSS (Bankr. D. Del. April 9, 2014), Docket No. 198 (authorizing the rejection of executory contracts and unexpired leases *nunc pro tunc* to the petition date); *In re Filene's Basement, LLC,* No. 11-1351 l(KJC) (Bankr. D. Del. Nov. 22, 2011), Docket No. 246 (authorizing the rejection of executory contracts and unexpired leases *nunc pro tunc* to the petition date at a "second day" hearing); *see also Thinking Machs Corp. v. Mellon Financial Servs. Corp. (In re Thinking Machs Corp.),* 67 F.3d 1021, 1028 (1st Cir. 1995) (noting that "[i]n the section 365 context, this means that bankruptcy courts may enter retroactive orders of approval, and should do so when the

---

[7] Under Bankruptcy Code Section 365(g), the rejection of an executory contract or unexpired lease constitutes a breach of such contract or lease immediately before the date of the filing of the petition. Nevertheless, out of an abundance of caution, the Debtor submits that *nunc pro tunc* relief is appropriate in order to stem any argument from a counterparty that administrative obligations have been accruing under the Leases on or after the Petition Date.

balance of equities preponderates in favor of such remediation"); *In re Jamesway Corp.,* 179 B.R. 33, 36-37 (S.D.N.Y. 1995) (stating that section 365 does not include "restrictions as to the manner in which the court can approve rejection").

27. Here, the balance of the equities favors the relief requested herein. Without a retroactive date of rejection, the Debtor could be forced to incur unnecessary administrative expenses in connection with the Leases that provide no tangible benefit to the Debtor's estate. Moreover, the counterparties to the Leases will not be prejudiced if the rejection is deemed effective *nunc pro tunc* to the Petition Date because this motion is being served on such parties on the Petition Date via overnight mail (and being faxed and emailed to such parties to the extent fax numbers and email addresses are known), which will provide notice of the Debtor's unequivocal intent to reject the Leases as of the Petition Date. Moreover, with respect to the Leases, the subject Non-Core Stores have been vacated and the properties abandoned. Accordingly, the Debtor respectfully submits that it is fair and equitable for the Court to hold that the Leases are rejected *nunc pro tunc* to the Petition Date.

### C. The Abandonment of Personal Property is Appropriate

28. Further, the abandonment of the Personal Property is appropriate and authorized by the Bankruptcy Code. *See* 11 U.S.C. § 554(a). Bankruptcy Code section 554(a) provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." *Id.* Courts generally give a debtor-in-possession great deference to its decision to abandon property. *See, e.g., In re Vel Rey Props., Inc.,* 174 B.R. 859, 867 (Bankr. D.D.C. 1994) ("Clearly, the court should give deference to the trustee's judgment in such matters."). Unless certain property is harmful to the public, once a debtor has shown that it is burdensome or of inconsequential value to the estate, a court should approve the abandonment. *Id.*

29. The Debtor has determined that the costs of moving and storing any Personal Property will far outweigh any benefit to the Debtor's estate. Further, any efforts by the Debtor to move or market the Personal Property could unnecessarily delay the Debtor's surrender of the Non-Core Stores and the rejection of the Leases. Accordingly, it is in the best interests of the Debtor and its estate for the Debtor, in its sole discretion, to abandon the Personal Property located at the Non-Core Stores.

30. Courts in this and other jurisdictions have approved relief similar to the relief requested herein. *See, e.g., In re QCE Finance LLC,* No. 14-10543-LSS at Docket No. 198 (authorizing debtor to abandon personal property located at site of rejected lease); *In re AES Eastern Energy, L.P.,* No. 11-14139, (Bankr. D. Del. May 17, 2012), Docket No. 484 (authorizing rejection of unexpired leases *nunc pro tunc* to the date of filing the motion for rejection); *In re Mail Systems Liquidation, Inc.,* No. 11-11187 (Bankr. D. Del. Oct. 18, 2011), Docket No. 502 (same); *In re Visteon Corp.,* No. 09-11786 (Bankr. D. Del. June 23, 2009), Docket No. 393 (authorizing rejection of leases *nunc pro tunc* to petition date at "second day" hearing); *In re Circuit City Stores, Inc.,* No. 08-35653 (Bankr. E.D. Va. Nov. 10, 2008), Docket No. 81 (authorizing rejection of leases and abandonment of property *nunc pro tunc* to petition date at first day hearing); *In re Buffets Holdings, Inc.,* No. 08-10141 (Bankr. D. Del. Feb. 13, 2008), Docket No. 292 (authorizing rejection of leases and abandonment of property *nunc pro tunc* to petition date at "second day" hearing); *In re Pope & Talbot, Inc.,* No. 07-11738 (Bankr. D. Del. Dec. 13, 2007), Docket No. 148 (authorizing rejection of contracts *nunc pro tunc* to petition date at "second day" hearing); *In re Movie Gallery, Inc.,* No. 07-33849 (Bankr. E.D. Va. Oct. 17, 2007), Docket No. 99 (authorizing rejection of contracts and leases *nunc pro tunc* to the petition date at first day hearing); *In re Calpine Corp.,* No. 05-60200 (Bankr. S.D.N.Y. Dec. 21,

2005), Docket No. 32 (authorizing rejection of leases *nunc pro tunc* to petition date at first day hearing); *In re Tower Auto., Inc.,* No. 05-10578 (Bankr. S.D.N.Y. Feb. 3, 2005), Docket No. 46 (authorizing rejection of leases *nunc pro tunc* to petition date at first day hearing); *In re Cornerstone Propane, L.P.,* No. 04-13856 (Bankr. S.D.N.Y. June 10, 2004), Docket No. 40 (authorizing rejection of contracts and leases *nunc pro tunc* to petition date at first day hearing).[8]

## NOTICE

31.  The Debtor will provide notice of this Motion to: (a) the Office of the U.S. Trustee; (b) the holders of the 20 largest unsecured claims against the Debtor; (c) the United States Attorney's Office for the District of Delaware; (d) the Internal Revenue Service; (e) Grove Family Investments, L.P and its counsel.; (f) CNL Financial Group, Inc. and its counsel; (g) American Express Bank, FSB and its counsel; (h) the counterparties to the Leases set forth on **Exhibit 1** to **Exhibit A** hereto; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002.

[*Remainder of Page Left Intentionally Blank*]

---

[8] Due to the voluminous nature of the orders cited herein, such orders are not attached to this motion. Copies of these orders are available upon request of the Debtor's proposed counsel.

WHEREFORE, for the reasons set forth herein, the Debtor respectfully requests that the Court enter an order authorizing and approving (a) the rejection of Leases, including any guaranties thereof and any amendments, modifications, renewal, options, or subleases thereto for nonresidential real property located at the premises set forth on **Exhibit 1** to **Exhibit A**, effective *nunc pro tunc* to the Petition Date, and (b) the abandonment of Personal Property, together with such other and further relief as may be just, proper and equitable.

Respectfully submitted,

Dated: December 2, 2015

DUANE MORRIS LLP

*/s/ Sommer L. Ross*
Sean J. Bellew (DE 4072)
Sommer L. Ross (DE 4598)
Jarret P. Hitchings (DE 5564)
222 Delaware Avenue, Suite 1600
Wilmington, DE 19801-1659
Telephone: 302.657.4900
Facsimile:  302.657.4901
sjbellew@duanemorris.com
slross@duanemorris.com
jphitchings@duanemorris.com

*Proposed Counsel to Debtor and Debtor-in-Possession Restaurants Acquisition I, LLC*