## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RESTAURANTS ACQUISITION I, LLC | ) | Case No. 15-12406 (KG) |
| | ) | |
| Debtor. | ) | |

## MEMORANDUM OPINION

The Court has before it a Motion of the Texas Comptroller of Public Accounts and

the Texas Workforce Commission (the "Movants") to Transfer Venue (the "Motion") to

the United States Bankruptcy Court for the Northern District of Texas.  For the reasons

set forth below, the Court will deny the Motion.

## JURISDICTION

The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and

1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND FACTS

On December 2, 2015 (the "Petition Date"), Restaurants Acquisition I, LLC (the

"Debtor" or the "Company") filed for chapter 11 bankruptcy protection in the Court.

Two weeks later, the Movants filed the Motion to transfer venue of the chapter 11

proceeding to the United States Bankruptcy Court for the Northern District of Texas. D.I.

68.  The Debtor subsequently filed its objection to the Motion (the "Objection").  D.I. 87.

There is no dispute of material fact[1], and in order to facilitate the Court's analysis, the

---

[1] The location of Debtor's principal place of business is disputed: Tennessee is the "nerve center" of Debtor's operations, while the Northern District of Texas has Debtor's restaurants.  The dispute is not "material" because 28 U.S.C. § 1408 also provides for venue where a debtor has its "principal assets" in the United States.  Debtor's principal assets are in Texas.

parties have submitted a joint-statement of undisputed facts.  *Joint Pre-Trial Stipulation Related to Motion of the Texas Comptroller of Public Accounts and the Texas Workforce Commission to Transfer Venue*, D.I. 170, (the "Stipulation").  A summary of the Stipulation follows, together with supporting exhibits ("Hrg. Ex. _____").

The Debtor is a Delaware limited liability company that operated a chain of thirty (30) restaurants throughout the state of Texas.  Stipulation ¶¶ 4, 13, Hrg. Ex. M1, ¶ 11, D1-3.  As of the date of this opinion, the Debtor continues to operate twelve (12) of these restaurants and "employs approximately 530 employees and staff."  Stipulation ¶¶ 18, 21, Hrg. Ex. M1, ¶¶ 12, 14.  The parties note that all but four of these employees either live or work in Texas.  Stipulation ¶ 21.  However, the Debtor's central management, books, and records are located in Hendersonville, Tennessee.  Stipulation ¶¶ 25-28, Hrg. Ex. M1, ¶ 20.

The Debtor's pre-petition capital structure consisted of $7,512,324.00 in assets and $14,722,572.74 in liabilities.  Stipulation ¶ 60.  These liabilities include a secured credit agreement with CNL Financial Group, Inc. ("CNL") under which CNL is currently owed approximately $3,128,323.18.  Stipulation ¶ 35.  CNL is incorporated in Florida and maintains its principal place of business in Orlando.  *Id*.  In addition to the CNL loan, the Debtor is a party to a second secured credit agreement with American Express Bank, FSB ("AmEx").  *Id*.  As of the Petition Date, the amount owed to AmEx Bank is approximately $851,520.99.  *Id*.  AmEx Bank is a federally chartered savings bank and maintains its principal place of business in Salt Lake City, Utah.  *Id*.  The Debtor's final pre-petition lender, CFG XV, Inc. ("CFG") is owed approximately $1.42 million.  Debtor's Br. ¶ 14.

2

CFG is also a Florida corporation that maintains its principal place of business in Orlando. *Id.* CNL, AmEx, and CFG have all retained Delaware counsel to advise them with respect to these proceedings. Stipulation ¶¶ 36, 37. Counsel for CNL was retained after the Petition Date, and none of these lenders were involved in the forum selection process. *Joinder in Debtor's Objection to Motion of the Texas Comptroller of Public Accounts and the Texas Workforce Commission to Transfer Venue*, D.I. 89.

With respect to the remaining liabilities, the Company has incurred numerous obligations in the form of "unsecured trade debt and other outstanding operating expenses, including, but not limited to, rent, general operating payables and past-due taxes." *Affidavit/Declaration in Support of First Day Motion and Chapter 11 Petition by W. Craig Barber*, D.I. 21 (the "Declaration"), ¶ 27. While many of these trade creditors and landlords are geographically dispersed across the United States, a significant percentage of them are located in Texas. *Amended Petition to Include Updated Official Forms 201 and 204 and Amended List of Top 20 Creditors*, D.I. 53 (the "List of Creditors"). On the List of Creditors, sixty-five percent (65%) of the Debtor's twenty largest unsecured creditors have Texas addresses. *Id.* None of these creditors are located in Delaware. *Id.* Moreover, eighty-five percent (85%) of all general unsecured creditors are located in Texas; however, sixty-five percent (65%) of these creditors are located outside of Texas based on dollar amount. Stipulation ¶ 60. The Debtor's largest general unsecured trade creditor, U.S. Foods, Inc. ("U.S. Foods"), supplies over 80% of Debtor's foods and is headquartered in Rosemont, Illinois. Stipulation ¶ 38. U.S. Foods has also retained Delaware counsel. Debtor's Br. ¶ 17. The parties further note that "[a]t least nine (9) of the Debtor's twenty-

eight (28) landlords are located in states other than Texas, including Colorado, Florida, Arizona, and California." Stipulation ¶ 39. Additionally, 160 former employees of the Debtor are owed $76,768.22 in unpaid wages. Stipulation ¶ 60. These employees all live in Texas. *Id.*

The primary impetus for this Motion is a tax dispute involving the Debtor and the Movants. In the Declaration, Mr. Barber identifies the Debtor's pending lawsuit with the Texas Comptroller in Travis County District Court for the First Audit as one of the events leading to the bankruptcy filing. Declaration ¶ 35. According to the Movants, the Debtor's known tax liability currently exceeds $4 million – a substantial percentage of the Debtor's total liabilities. Movant's Br. ¶ 21. The Debtor, however, disputes this figure and estimates that its total tax liability may be less than $200,000. Debtor's Br. ¶ 22. The Movants and the Debtor are currently engaged in multiple legal disputes in Texas state court pertaining to the Debtor's tax liability during various pre-Petition Date time periods, the specific details of which are unnecessary to the resolution of this Motion.

## DISCUSSION

Section 1408 of title 28 of the United States Code permits a Debtor to commence a chapter 11 proceeding in a venue where, *inter alia*, it is domiciled, maintains a principal place of business or has its principal assets. 28 U.S.C. § 1408(1). Because the Debtor is organized under the laws of Delaware, this forum is proper under the statute. Notwithstanding the fact that the case was commenced in a proper venue, however, Section 1412 permits the Court to transfer venue in "the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412; *see also* FED. R. BANKR. P. 1014. In

determining whether a venue transfer would serve the convenience of the parties, courts generally examine the following six factors:

1. the proximity of creditors of every kind to the Court;

2. the proximity of the debtor to the Court;

3. the proximity of the witnesses necessary to the administration of the estate;

4. the location of the assets;

5. the economic administration of the estate; and

6. the necessity for ancillary administration if liquidation should result.

*Commonwealth of Puerto Rico v. Commonwealth Oil Refining Co. (In re Commonwealth Oil Refining Co.)*, 596 F.2d 1239, 1247 (5th Cir. 1979) ("*CORCO*"); *In re Enron Corp.*, 274 B.R. 327, 343 (Bankr. S.D.N.Y. 2002); *In re Caesars Entm't Operating Co.*, 2015 Bankr. LEXIS 314, at *19 (Bankr. D. Del. Feb. 2, 2015). Under this analysis, "the factor given the most weight is the promotion of the economic and efficient administration of the estate." *Enron*, 274 B.R. at 343. The movant bears the burden of demonstrating that the factors strongly weigh in favor of a transfer as courts will generally grant substantial deference to a debtor's choice of forum. *See generally id.* at 342 ("[a] debtor's choice of forum is entitled to great weight if venue is proper"); *In re Suntech Power Holdings Co.*, 520 B.R. 399, 420 (Bankr. S.D.N.Y. 2014) ("Where the case is initially brought in a proper venue, the debtor's choice of forum is entitled to great weight."); *In re Rehoboth Hospitality, LP*, 2011 Bankr. LEXIS 3992, at *10 (Bankr. D. Del. Oct. 19, 2011) ("Generally, there is a presumption in favor of maintaining the debtor's choice of forum."); *In re Uslar*, 131 B.R. 22, 23 (Bankr. E.D. Pa. 1991) ("unless the balance is strongly in favor of transferring venue, the debtor's

choice of forum should rarely be disturbed"). This Court has applied the *CORCO* test in prior cases, most notably in its recent decision to transfer venue of *Caesars*, 2015 Bankr. LEXIS 314.

### 1. Proximity of Creditors

With respect to the first factor, proximity of creditors of every kind to the court, courts have held that the dollar value of each creditor's claim should factor into this aspect of the analysis. *See Enron*, 274 B.R. at 345 (citing *CORCO*, 596 F.2d at 1248) ("In considering the proximity of creditors, this [c]ourt must examine both the number of creditors as well as the amount of claims held by such creditors."). After taking into account both of these considerations, the Court finds that this factor weighs against a transfer. Although the Movants are correct in noting that a significant majority of the Debtor's general unsecured creditors are located in Texas, the Court cannot ignore the non-Texas entities' large percentage of the general unsecured claim pool. More specifically, while the parties have estimated that "85% of the Debtor's known general unsecured creditors are in Texas," 65% of the value of these claims is held by non-Texas entities. The Company's largest trade creditor, U.S. Foods, is headquartered in Illinois. With respect to the landlords, the parties have stipulated that at the bare minimum, nine (9) of the twenty-eight (28) landlords are located outside of Texas. While these non-Texas entities constitute approximately one-third of all landlords, this percentage is not insignificant, especially in light of the Movants' heightened burden.

In addition to the large amount of general unsecured debt held by non-Texas entities, all of the Debtor's pre-petition secured credit was extended by financial

institutions based outside of Texas.  These creditors are owed, in the aggregate, approximately $4 million.  Moreover, the Debtor's pre-petition unsecured lender, CFG, is owed approximately $1.42 million.  All three of these lenders have retained Delaware counsel and have invested substantial time and resources in this matter.  Accordingly, transferring the case to Texas would impose a heavy burden on all three of the Debtor's pre-petition lenders and their professionals.

When analyzing factor one, courts may also take into account a creditor's forum preference.  *See Enron*, 274 B.R. at 345 (citing cases); *In re Suzanne De Lyon, Inc.*, 125 B.R. 863, 868 (Bankr. S.D.N.Y. 1991) ("[o]f particular significance is the desire of the two secured banks to keep the case in New York").  The Court acknowledges that CNL, AmEx Bank, Brixmor Property Group, Inc., Brixmor Holdings 12 SPE, LLC, Peterson Equities, LLC, and U.S. Foods have all filed joinders to the Debtor's Objection.  Stipulation ¶¶ 64-68.  MLE Restaurant Group, LLC, and counties in Texas filed joinders in support of the Motion.  Stipulation ¶¶ 62-63.  That all three of the Debtor's pre-petition lenders and its largest unsecured trade creditor have expressed their support for the Objection is significant: even if the Debtor is ultimately adjudged liable in the amount claimed by the Texas taxing authorities, the aggregate amount owed to U.S. Foods and the pre-petition lenders would still likely exceed the dollar value of the Movants' claim. The Court does not take lightly the 160 former employees and their claims.  The Court will be amenable to their participation in hearings by telephone, as the Court has done in numerous other cases.  Whether former employees will have consented claims remains to be seen.

In order to overcome the strong presumption in favor of this venue, a transfer must substantially improve the administrative feasibility with respect to the creditor body as a whole. Because the Movants have failed to establish that the Northern District of Texas would be a more convenient forum for most of these major creditors, the Court finds that the first factor weighs against a transfer.

### 2.  Proximity of Debtor

Factor two, the proximity of the Debtor to the court, also weighs against a transfer. The fact that the Debtor's restaurants and offices are located in Texas and Tennessee is not dispositive with respect to this factor. Courts have noted the inquiry should focus primarily on the location of parties that must appear in court. *See CORCO*, 596 F.2d at 1248 ("The concern is with the corporation's employees who must appear in court, not with the employees who are on the production line."); *Enron*, 274 B.R. at 347 ("the certain participants in the proceedings before this Court will be the professionals retained in these cases."); *Caesars*, 2015 Bankr. LEXIS 314, at *20 ("In the *CORCO* convenience analysis, courts often focus more closely on the location of the debtors' and creditors' professionals."). As was the case in *CORCO*, the Debtor's management will likely have to appear before this Court with a greater frequency than its employees. Further, Mr. Barber has appeared before this Court on multiple occasions and has expressed his willingness to travel to Delaware. Should any disputes arise pertaining to the Debtor's employees, the affected individuals may either appear telephonically or retain local counsel. Accordingly, factor two weighs against a transfer.

8

### 3.    Proximity of Witnesses

With respect to factor three, the proximity of the witnesses, neither party disputes that the vast majority of the Debtor's employees are located in Texas.   However, as discussed *supra*, numerous individuals and entities involved in the administration of the estate are located outside of Texas.   Accordingly, factor three is neutral.

### 4.    Location of Assets

With respect to factor four, courts have noted that the location of a company's assets is not as crucial to the analysis "where the ultimate goal is rehabilitation rather than liquidation."   *See Enron*, 274 B.R. at 347 (citing *CORCO*, 596 F.2d at 1248).   *Accord In re Patriot Coal Corp.*, 482 B.R. 718, 753-54 (Bankr. S.D.N.Y. 2012).   It is undisputed that the Debtor has no assets in Delaware.    Its largest assets are "leasehold interests in the remaining [Texas] Prepetition Stores and any furniture, fixtures and equipment located therein."   Debtor's Br. ¶ 45.   Additionally, the Debtor maintains its books and records in Tennessee.   Although the physical location of the assets weighs in favor of a transfer, this consideration does not factor heavily into the analysis.   Because the Debtor is seeking to reorganize rather than liquidate, there is no need for the Court or a trustee to marshal and sell the Debtor's assets.   The Texas bankruptcy court's proximity to the Debtor's tangible assets provides minimal incremental benefits in the context of this chapter 11 proceeding.

### 5.    Economic Administration

The economics of the estate is generally considered the most important factor in determining whether a transfer would be in the convenience of the parties.   *See Caesars*,

2015 Bankr. LEXIS 313, at *22 (citing *Enron Corp.*, 274 B.R. at 348).  When analyzing this factor, courts focus on the potential adverse impact a transfer may have on a debtor's ability to obtain financing and reorganize.  *See, e.g.*, *In re Suzanne De Lyon, Inc.*, 125 B.R. 863, 869 (Bankr. S.D.N.Y. 1991).  In support of its position, the Debtor notes that if the case were transferred to Texas, both the Debtor and its largest creditors would need to retain new or additional counsel.  Because it has yet to obtain post-petition financing and is operating under numerous liquidity constraints, this added financial burden and time delay could potentially derail the Debtor's efforts to reorganize.  If the case were retained in this jurisdiction, however, the relative burdens on the Movants would be minimal.  Out of town parties routinely make telephonic appearances before the Court, and governmental units are generally not required to retain local counsel.  *See* Del. Bankr. L.R. 9010-1(e)(1).  Additionally, the Debtor's trade creditors are geographically dispersed and a significant number of them would need to travel regardless of whether the proceedings were to take place in Delaware or Texas.  While the Court is aware that the Movants may hold a substantial tax claim against the Debtor and respects their desire to adjudicate such claims in a local forum, nothing in this opinion precludes the Movants from seeking to lift the automatic stay and litigate such claims in a Texas state court.  When a final judgment is rendered, this Court will handle such claims accordingly.  As a result, the Court finds that this factor weighs against a transfer.

### 6.  Ancillary Administration

The Debtor's reorganization strategy does not contemplate liquidation, and therefore there is no need for the Court to discuss the sixth and final factor, the necessity

for ancillary administration.   Since the Movants have failed to demonstrate by a preponderance of the evidence that the *CORCO* factors weigh in favor of a transfer, the Court finds that a transfer would not serve the convenience of the parties.

## Other Considerations

Notwithstanding the fact that the *CORCO* test weighs against a transfer, the Court still may order a transfer if doing so would serve the interests of justice.  28 U.S.C. § 1412. When determining whether a transfer would serve the interests of justice, courts consider whether such transfer "will promote the efficient administration of the estate, judicial economy, timeliness, and fairness."  *Enron*, 274 B.R. at 343 (quoting *Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.)*, 896 F.2d 1384, 1391 (2d Cir. 1990)).  This standard is a flexible one that "must be applied on a case-by-case basis."  *Manville*, 896 F.2d. at 1391.  In *Enron*, the court articulated that "the considerations involved with the interest of justice are intertwined with the economic and efficient administration of the estate."  *Enron*, 274 B.R. at 349.

Because any venue transfer inherently requires a new court to start over and familiarize itself with a debtor's business operations and capital structure, courts have applied a "learning curve" analysis when determining whether a transfer would be in the interests of justice.  *Id*.  "The learning curve analysis involves consideration of the time and effort spent by the current judge and the corresponding effect on the bankruptcy case in transferring venue."  *Id*. (citing *In re Vienna Park Properties*, 125 B.R. 84, 87 (S.D.N.Y. 1991)).  While the Debtor's business model and capital structure are not complicated, the learning curve nonetheless weighs against a transfer.  This Court has spent a significant

11

amount of time familiarizing itself with the Debtor's business and has granted numerous requests for relief in connection with these proceedings. Although it is certainly true that a Texas bankruptcy court is more than capable of overseeing this case, the Debtor emphasizes that any unnecessary time delay associated with the learning curve could substantially limit the Company's ability to reorganize. *See generally In re DDMD Trucking, Inc.*, 2015 Bankr. LEXIS 257, at *12 (Bankr. D.N.M. Jan. 28, 2015) ("it would be more efficient to keep the case in this court rather than require another court to 'get up to speed.'"). Furthermore, the parties that will play the largest role in the Debtor's restructuring efforts include management, the lenders, and the trade vendors. All of these individuals and entities have invested time and resources in order to ensure that the Debtor can promptly exit chapter 11. The Court concludes that it simply would not be fair to these parties to require them to hire new counsel and wait for its new advisors to "get up to speed." This delay could potentially have an adverse impact on the Debtor's restructuring efforts and would further complicate the overall administration of the estate.

In addition to the learning curve, a debtor's right to select a proper forum is also pertinent to the interest of justice analysis. *See, e.g., In re PWS Holding Corp.*, 1998 Bankr. LEXIS 549, at *14 (D. Del. April 28, 1998) ("[I]t is a fundamental legal tenet that every citizen of a state is entitled to take advantage of the state and federal judicial process available in that state."); *Caesars*, 2015 Bankr. LEXIS 314, at *24 ("Courts have consistently commented that the debtor's choice of forum is entitled to a certain level of deference if venue is proper under Section 1408."). Here the Debtor is a Delaware limited liability

company with all the accompanying rights and privileges.  There is no evidence that its decision to file its chapter 11 petition in this jurisdiction was a product of bad faith or poor business judgment.  Furthermore, the lenders have noted there was no collusion prior to the Petition Date and that the decision to file here was made by the Debtor. Granting deference to its decision to file for chapter 11 in this forum is consistent with the jurisprudence on this issue.  As a result, the Court concludes that a venue transfer would not serve the interests of justice.

## CONCLUSION

As counsel for the lenders succinctly stated at oral argument, this Motion primarily concerns the Movants' desire to resolve the tax disputes. The Court fully respects the Movants' position and is cognizant of Texas' interest in resolving state tax disputes in a local forum.   However, a motion to transfer venue of the entire chapter 11 proceeding must be viewed from the lens of all interested parties.  Here, the primary focus concerns the economic administration of the estate and the transfer's impact on a debtor's efforts to reorganize.  Accordingly, the Court concludes that it must deny the Motion.  An appropriate Order will issue.


Dated:  March 4, 2016

KEVIN GROSS, U.S.B.J.