## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| RESTAURANTS ACQUISITION I, LLC, | Case No. 15-12406 (KG) |
| Debtor. | |

## STATUS REPORT

## BACKGROUND

1.      On December 2, 2015 (the "Petition Date"), Restaurants Acquisition I, LLC (the "Debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").

2.      On September 30, 2016, the Debtor's chapter 11 case was converted to a case under chapter 7 [Dkt. No. 369].

3.      On September 30, 2016, Alfred T. Giuliano was appointed as chapter 7 trustee (the "Trustee") of the Debtor's estate (the "Estate") pursuant to section 701(a) of the Bankruptcy Code [Dkt. No. 370].

4.      Prior to the commencement of this bankruptcy case, the Debtor owned and operated a chain of restaurants in Texas under the trade names Black-Eyed Peas and Dixie House.  As of January 1, 2015, the Debtor operated 30 restaurants, and as of December 2, 2015, the Debtor only operated 14 restaurants, having vacated and closed 15 restaurants and having been locked out of another restaurant.

5.       During the chapter 11 case, the Debtor continued to operate certain of the restaurants.

## PROGRESS OF CHAPTER 7 CASE

6.    Since his appointment, the Trustee has been working to monetize and liquidate the Debtor's remaining assets and to minimize administrative expenses.

7.    Once it became clear that the Trustee would be unable to sell the Debtor's assets as a going concern, the Trustee filed various motions to reject the Debtor's remaining non-residential real property leases (including some that were assumed in the chapter 11 case) and to abandon related furniture, fixtures and equipment (FFE), as the FFE was subject to a secured lien [*see* Dkt. Nos. 380, 381, 389, 407, 408, 410, 453 and 462]. The Trustee also moved to terminate the claims agent in this case [*see* Dkt. Nos. 393 and 400].

8.    The Trustee resolved significant PACA claims asserted by Brothers Produce of Austin, Inc., Brothers Produce of Dallas, Inc., and US Foods [*see* Dkt. Nos. 570 and 574].

9.    The Trustee obtained authority to conduct Rule 2004 exams of certain insiders to investigate potential Estate claims [*see* Dkt. Nos. 539, 544, 548, 549 and 550].

## LITIGATION COMMENCED BY TRUSTEE

10.    The Trustee commenced avoidance actions against various defendants.

11.    The Trustee also filed a complaint (the "Insider Complaint") against certain insiders, commencing Adv. Pro. No. 17-51853 (KG) (the "Insider Litigation"). In the Insider Complaint, the Trustee asserted fourteen counts, which included: (i) preference and fraudulent transfer claims against Dynamic Management Company, LLC ("DMC") seeking the recovery of more than $1.1 million; (ii) fraudulent transfer and other claims seeking the recovery of post-petition transfers of over $600,000 to DMC; (iii) recovery of alleged pre-payments to DMC of over $400,000; (iv) breach of management agreement claims against DMC; (v) preference and fraudulent transfer claims against Impact Hospitality LLC seeking the recovery of over $60,000;

(vi) preference and fraudulent transfer claims against Denamic, LLC ("Denamic") seeking recovery of more than $400,000; (vii) fraudulent transfer claims against W. Craig Barber ("Barber") and Robert M. Langford ("Langford") in connection with their post-petition salaries; and (viii) breach of duty and alter ego/veil piercing claims against Barber and Langford.

8.      There was not any D&O or similar insurance available to cover any of the claims asserted in the Insider Complaint. As such, any judgment would need to be paid by Barber and Langford, the ultimate owners of the Debtor, as many of the corporate defendants were no longer operating or had no meaningful assets.

9.      At the outset, the insider defendants alleged financial hardship in connection with any potential sizeable adverse judgment. The parties engaged in informal discovery in connection with the financial hardship allegation.

10.     After several unsuccessful attempts to resolve the Insider Litigation, the parties engaged in mediation on December 19, 2018, with Mark Felger as the mediator. As a result of the mediation, the parties arrived at a resolution with the defendants agreeing to pay the Estate $300,000 over 3 years. The settlement was approved by the Court on April 3, 2019 [Dkt. No. 583].

## OPEN ITEMS AND REMAINING TASKS

12.     The Trustee continues to collect the settlement proceeds from the Insider Litigation and expects this to continue through May 30, 2022.  As such, this case should remain open to allow the Trustee to collect such funds, which are necessary to pay for chapter 7 administrative expenses incurred in the case.

Dated:  November 13, 2019

By:  /s/ *David W. Carickhoff*
David W. Carickhoff (DE No. 3715)
ARCHER & GREINER, P.C.
300 Delaware Avenue, Suite 1100
Wilmington, DE  19801
Telephone:  302-777-4350
Facsimile:  302-777-4352

Attorneys for the Chapter 7 Trustee

217542739v1